Argued and submitted March 31, 2005, reversed and remanded February 8, 2006

Glenn O. BERTRAM
and Mishawn L. Bertram,
Conservators of the Estates of
Kayla Bertram and Tyler Bertram;
and Mishelle Tillery,
Conservator of the Estate of
Zachary Tillery Seffker,
*Appellants,*

*v.*

MALHEUR COUNTY,
an Oregon county,
*Respondent.*

02-11-2428-L; A123830

129 P3d 222

W. Eugene Hallman argued the cause for appellants. With him on the briefs was Hallman & Dretke.

Cecil A. Reniche-Smith argued the cause for respondent. With her on the brief were Janet M. Schroer and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Brewer, Chief Judge,* and Ortega, Judge.**

BREWER, C. J.

---

* Brewer, C. J., *vice* Linder, J.
** Ortega, J., *vice* Richardson, S. J.

## BREWER, C. J.

Plaintiffs are the conservators of the estates of two minor victims of sexual abuse in Malheur County. They brought this negligence action against the county, alleging that the county, through the Malheur County Juvenile Department (the juvenile department), was negligent in investigating and responding to sexual abuse allegations against CP, a youth whom the juvenile department knew had committed sexual abuse against a child in Union County, and that the negligence resulted in CP's commission of acts of sexual abuse against the Malheur County victims. Plaintiffs appeal after the trial court granted partial summary judgment for the county that dismissed the first of plaintiffs' two claims, which was based on events that occurred before the Malheur County juvenile court assumed jurisdiction over CP and the juvenile department began supervising him. We reverse and remand.

We review the trial court's grant of summary judgment to determine whether defendant, the moving party, was entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). In reviewing the court's summary judgment ruling, we view the facts in the light most favorable to plaintiffs. *McCabe v. State of Oregon*, 314 Or 605, 608, 841 P2d 635 (1992). In February 2000, the juvenile department received a copy of an Oregon State Police report documenting allegations that CP had sexually abused a five-year-old girl in Union County. The record does not show who transmitted the police report to the juvenile department; however, the police investigation was instigated by a report from a Union County branch of the State Office for Services to Children and Families (now the Department of Human Services) (DHS). Although the abuse was alleged to have occurred in Union County, the juvenile department was notified because CP and his family had moved to Malheur County shortly after the abuse allegedly occurred.

On March 9, the Union County District Attorney sent a letter to the Malheur County District Attorney, confirming the latter's agreement "to handle the case, even if [CP] continues to deny the crime and a trial is necessary." On

March 15, Cummings, the assistant director of the juvenile department, sent a letter to CP's parents. In the letter, Cummings stated that "[CP] has been referred to the Malheur County Juvenile Department for the following reason: SEX ABUSE I." In the letter, Cummings also asked to meet with CP and his parents on March 31, 2000, to discuss the allegations. That meeting did not occur.

On December 1, 2000, a petition was filed in Malheur County alleging that CP was within the jurisdiction of the Malheur County juvenile court under ORS 419C.005 based on the Union County abuse.[1] CP was brought before the juvenile court on December 19, 2000, and the court placed him on conditional release under the juvenile department's supervision. The court adjudicated CP on the Union County charge on February 20, 2001, and he began sex offender treatment in March 2001. While in treatment, CP admitted that he had sexually abused the Malheur County victims in 2000 and 2001. This action arises from that abuse.

As noted, in their amended complaint, plaintiffs asserted two negligence claims against the county. The first claim was based on abuse that occurred before the delinquency petition was filed and before CP was placed under the juvenile department's supervision. In that claim, plaintiffs alleged in separate specifications that the county was negligent in (1) failing to properly evaluate the charges against CP; (2) failing to investigate the allegations in the police report to determine if other children were at risk; (3) failing to initiate contact with CP within a reasonable period of time; and (4) failing to bring CP within the jurisdiction of the court within a reasonable time. In their second claim, plaintiffs alleged that the juvenile department was negligent in failing to adequately supervise CP after the court conditionally released him.

The county moved for summary judgment, arguing, among other things, that neither the relationship between the Malheur County victims and the county, nor the relationship between the county and CP, supported liability against

---

[1] Under ORS 419C.013(1), a juvenile proceeding based on allegations of jurisdiction under ORS 419C.005 may be commenced either in the county where the alleged conduct occurred or in the county in which the youth resides.

the county for CP's "independent criminal acts." Pursuant to ORCP 47 E, plaintiffs submitted in opposition to summary judgment an affidavit from their attorney stating that plaintiffs had retained an expert witness who would testify as to all issues in dispute on summary judgment. The trial court granted partial summary judgment with respect to plaintiffs' first claim. In a letter to the parties, the court explained that "many of the negligence allegations" encompassed in plaintiffs' first claim "relate to functions that are in the control of a court (e.g. release conditions), not the juvenile department." The court denied summary judgment with respect to the second claim. Plaintiffs appeal from the resulting ORCP 67 B judgment.

On appeal, plaintiffs argue that the trial court erred in two respects. For consistency with our analysis, we describe and discuss those arguments in reverse order. First, plaintiffs argue that the county had a "special relationship" with the Malheur County victims based on the juvenile department's statutory duties to investigate and respond to reports of child abuse. Plaintiffs also assert that, regardless of whether there existed a "special relationship" between the county and the Malheur County victims or between the county and CP, the county is liable to the Malheur County victims for the harm alleged in their first claim under the tort principle of "general foreseeability."

The county responds that the juvenile department had no statutory duty to investigate or respond to the allegations against CP that gave rise to a special relationship between the county and the Malheur County victims. The county also argues that the principle of general foreseeability does not apply in this case. Rather, the county contends that this case is governed solely by the rule set forth in section 315 of the *Restatement (Second) of Torts* (1965), and the exception to that rule articulated in section 319.[2]

██ The parties' arguments reflect, in yet another iteration, the controversy engendered by the Supreme Court's decisions in the so-called *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), trilogy and the later

---

[2] We set out and discuss those sections below.

application of the principles enunciated in those cases by the Supreme Court and this court. To place those arguments in perspective, we briefly review the guiding principles that are implicated here. In a negligence action, unless the plaintiff invokes a

> "status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [the defendant's] conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Id.* at 17. If there is no such special relationship, we apply the general foreseeability test. *See Panpat v. Owens-Brockway Glass Container*, 188 Or App 384, 391, 71 P3d 553 (2003) (applying general foreseeability principles when the defendant was not liable based on a special relationship). We therefore first consider whether a pertinent special relationship existed in this case between the county and plaintiffs.

As noted, plaintiffs argue on appeal, as they did before the trial court, that the juvenile department had multiple statutory duties to investigate and respond to reports of child abuse, thereby giving rise to a special relationship between the county and the Malheur County victims. Plaintiffs first point to ORS 418.747, which directed the district attorney of each county to establish interagency teams that include county juvenile department representatives, for the purpose of investigating allegations of child abuse.[3] ORS 418.747(1). The statute required those teams to "develop a written protocol for immediate investigation of and notification procedures for child abuse cases and for interviewing child abuse victims." ORS 418.747(2). The statute also required training for team members who dealt with child abuse situations, *see* ORS 418.747(3), and it set out procedures and protocols for conducting the investigations. *See* ORS 418.747(4)-(13). Although ORS 418.747 did not expressly impose on the juvenile department *itself* a duty to investigate or otherwise pursue allegations of child abuse, it

---

[3] We note that plaintiffs base their arguments on the current versions of the applicable statutes, not the 1999 versions that were in effect when the alleged liability-producing events in this case occurred. Because they are not substantively different from the applicable 1999 versions, we also discuss the current versions.

did require team members, including county juvenile department representatives, to carry out investigations in accordance with protocols under ORS 418.747(2). ORS 418.747(4). That obligation, which included a duty of "immediate investigation," arguably created a special relationship between the juvenile department, to whom the Union County allegations were referred, and the Union County victim. It did not, however, create a special relationship between the juvenile department and other persons, including the Malheur County victims, because there had been no allegation of child abuse regarding those victims. *Cf. Blachly v Portland Police Dept.*, 135 Or App 109, 117, 898 P2d 784 (1995) (holding that state agency's duty to investigate a child abuse report involving a day care center created a special relationship between the agency and children at the day care center, including those who had not been specifically named as victims in the report, because they were among a "finite group of children" at the facility who "were identified as suspected victims of abuse").

Plaintiffs also rely on ORS 419A.012(1) as a source of a special relationship between the juvenile department and the Malheur County victims. That statute required "[t]he director of a juvenile department or one of the counselors" to "[m]ake or cause to be made an investigation of every child, ward, youth or youth offender brought before the court and report fully thereon to the court." It is inapposite here for the same reason that ORS 418.747 did not create a special relationship between the juvenile department and the Malheur County victims; at most, it created a special relationship between the juvenile department and the Union County victim. Moreover, any duty arising under ORS 419A.012 had not yet been triggered when the harms for which plaintiffs seek relief in their first claim occurred. That statute required the juvenile department to investigate "every child, ward, youth or youth offender *brought before the court*" and to "report fully thereon to the court." (Emphasis added.) Because CP had not been brought before a court when the pertinent harms occurred, ORS 419A.012(1) is of no assistance to plaintiffs.[4]

---

[4] In their reply brief on appeal, plaintiffs also rely on ORS 419B.020. Because plaintiffs did not rely on that statute before the trial court or in their opening brief on appeal, we do not address it here.

■ ■     Having determined that none of the statutes on which plaintiffs relies created a special relationship between the juvenile department and the Malheur County victims, we turn to the parties' arguments concerning the issue of general foreseeability. For liability to attach under that principle, a trier of fact must be able to find that there was a reasonably foreseeable risk of harm to the plaintiff, and that the defendant's conduct was unreasonable in light of that risk. *Buchler v. Oregon Corrections Div.*, 316 Or 499, 511-14, 853 P2d 798 (1993); *see also Washa v. DOC*, 159 Or App 207, 222, 979 P2d 273 (1999), *aff'd by an equally divided court*, 335 Or 403 (2003) (stating that, in general terms, *Buchler* "had the effect of limiting the scope of foreseeable harms for which a defendant is liable to *reasonably* foreseeable harms").

As discussed, in their first claim for relief, plaintiffs alleged that the county was negligent because the juvenile department failed to (1) properly evaluate the charges against CP; (2) investigate the allegations in the police report to determine if other children were at risk; (3) initiate contact with CP within a reasonable period of time; and (4) bring CP within the jurisdiction of the court within a reasonable time. Plaintiffs alleged that, if the juvenile department had done those things, the juvenile court would have placed CP on a release agreement subject to certain release conditions and that the county's failure to bring CP within the jurisdiction of the court resulted in CP's sexual abuse of the Malheur County victims.

The trial court concluded that the county could not be held liable to the Malheur County victims under general foreseeability principles for abuse that occurred before the juvenile court assumed jurisdiction over CP and the juvenile department began supervising him. The trial court's reasoning generally is consistent with the county's argument that its liability, if any, must be determined solely under the *Restatement* at section 315. That section states the principle that "[t]here is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless" there is a "special relation" between an actor (here, the county) and a third person (CP) or "the other" (plaintiffs).

According to the county, there are few qualifying special relationships,[5] and, among those, only section 319 has possible application to this case. *See Restatement* at § 319 (stating that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm"). The county maintains that the Supreme Court adopted both sections 315 and 319 in *Buchler*, a case in which it held that there is no "general duty" to prevent crime. *Buchler*, 316 Or at 512 n 9.

The county commendably concedes that its argument is inconsistent with this court's decisions in *McAlpine v. Multnomah County*, 166 Or App 472, 999 P2d 522 (2000), *rev den*, 336 Or 60 (2003), and *Faverty v. McDonald's Restaurants*, 133 Or App 514, 892 P2d 703 (1995), *rev dismissed*, 326 Or 530 (1998). However, the county asserts that those decisions themselves are "inconsistent with the Supreme Court's analysis of the Restatement's application in *Buchler*." In that case, the Supreme Court held that section 319 defines a custodian's duty in Oregon. *Buchler*, 316 Or at 506. The court held, as a matter of law, that a prison escapee's crimes committed two days after his escape were not "reasonably foreseeable" consequences of a prison employee's failure to remove the keys from the prison van in

---

[5] *Restatement* at section 315 comment c states:

"The relations between the actor and a third person which require the actor to control the third person's conduct are stated in §§ 316-319. The relations between the actor and the other which require the actor to control the conduct of third persons for the protection of the other are stated in §§ 314 A and 320."

In addition to section 319, the first class of special relationships includes section 316, describing a parent's duty to control the conduct of his or her child, section 317, addressing the duty of a master to control the conduct of a servant, and section 318, setting out the duty of a possessor of property to control the conduct of a licensee.

The second class of special relationships includes section 314 A, listing four relationships giving rise to a duty to aid or protect another: (1) the common carrier/ passenger relationship; (2) the innkeeper/guest relationship; (3) the relationship between a possessor of land and members of the public to whom he or she opens the land; and (4) the relationship between custodian and protected person. Section 320 describes the duty of a custodian to control the conduct of third persons toward the protected person.

which the inmate escaped. The court noted that "[an] intervening criminal instrumentality caused the harm and created the risk" and, although "it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity." *Id.* at 511. Despite the fact that the state employee's action in leaving the keys in the van facilitated "an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, [the employee's act] does not cause the harm so as to support liability for it." *Id.* at 511-12. Importantly, the court distinguished between nonactionable conduct that merely facilitates the intervening criminal conduct of a third party, and actionable conduct that, despite intervening criminal conduct, foreseeably results in the plaintiff's harm:

> "Moreover, a criminal may employ means, other than those that a defendant unwittingly facilitated, to place him or herself in a position to inflict the same harm. This is not a case where the vehicle, with keys left in it, was the mechanism by which the escaped prisoner inflicted the harm; rather, it was merely one of the means by which an escape was possible and, even at that, one occurring in a situation where other means of escape were equally possible. For example, in this case, the prisoner could have escaped from custody on foot and, likewise, arrived at his mother's house after a few days, stolen the gun, and caused the very same harm of which plaintiffs complain."

*Id.* at 512.

In *McAlpine*, we held that, by adopting the special relationship rule in section 319 in *Buchler*, the Supreme Court did not also adopt the general principle of nonliability set out in section 315:

> "Defendant contends that the Supreme Court could not have intended to adopt section 319—an exception to section 315, *Buchler*, 316 Or at 505—without also adopting section 315, reasoning that exceptions do not exist in a vacuum and that, in the absence of the general rule, any exception to that rule would lack force. Thus, according to defendant, section 315 is the law in Oregon and, as such, operates to

preclude recovery under plaintiffs' alternative theory of general foreseeability.

"*Buchler*, on which defendant's position depends, stands for precisely the opposite proposition: In *Buchler*, the court, after addressing some of the plaintiffs' claims under the rubric of section 319 and finding no liability, proceeded to assess liability with respect to other claims under a 'general foreseeability' analysis. *Buchler*, 316 Or at 507-14. That is, the absence of liability based on a 'special relationship' under section 319 did *not* foreclose resort to general foreseeability. *Id.* That analysis would have been unnecessary— and, indeed, erroneous—if defendant's understanding of *Buchler* were correct.

"We note, moreover, that *Fazzolari* itself recognized third-party liability under the principles of general foreseeability and that we have previously and explicitly rejected the view that *Buchler* somehow repudiated resort to those principles in cases encompassed by the general rule of non-liability posed in section 315. In *Faverty v. McDonald's Restaurants*, 133 Or App 514, 521-22, 892 P2d 703 (1995), *rev dismissed* 326 Or 530 (1998), we affirmed an award of damages against the defendant employer for injuries to a motorist caused by an off-duty employee, observing that,

" '[t]hree *members* of the court [in *Buchler*] suggested that *Fazzolari* simply ought to be overruled. However, the majority of the court expressly declined to do that. Accordingly, at least until one more vote emerges on the Supreme Court to overrule *Fazzolari,* we are constrained to apply it.' (Emphasis in original.)

"We adhere to that conclusion."

*McAlpine*, 166 Or App at 480-81 (emphasis in original; footnote omitted). *McAlpine* and *Faverty* do not reflect isolated strands in this court's case law. We have consistently held that, in cases involving the absence of a qualifying special relationship, the intentional intervening criminal act of a third person does not necessarily make the harm suffered by a plaintiff unforeseeable to the defendant as a matter of law. *See, e.g., Panpat*, 188 Or App at 391-94; *Sande v. City of Portland*, 185 Or App 262, 272-74, 59 P3d 595 (2002); *Washa*, 159 Or App at 222-25.

The county asserts that we should repudiate our reasoning in those decisions because they have fostered the imposition of unrestricted responsibility for failing to control the conduct of others that the Supreme Court rejected in *Buchler*. According to the county, although the Supreme Court in *Buchler* "discussed the defendant's potential liability for the remaining claims in terms of reasonable foreseeability of the risk of harm, its ultimate conclusion was framed in terms of causation." As the county sees it, a proper understanding of *Buchler* requires the recognition that, in the absence of a special relationship, the general rule set out in section 315 always operates to cut off liability for failure to control the intentional conduct of another person; in such situations, the defendant's act simply is not the cause of the plaintiff's injury.

We agree with the county to this extent: the pertinent question is whether there was a triable issue concerning whether the Malheur County victims' injuries were a legally foreseeable *consequence* of the county's wrongful conduct. *See Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 344-45, 83 P3d 322 (2004) (relying on *Buchler*, so describing the general foreseeability test). Thus, in cases such as *Buchler*, where there was no basis in the record from which to infer that the defendant reasonably should have known that its conduct would create a risk of the kind of harm that befell the plaintiff, a court should conclude as a matter of law that the risk of injury to the plaintiff was not "unreasonably created by" the defendant's negligence. *Buchler*, 316 Or at 507. In such cases, the defendant is a mere "unwitting" facilitator of the third party's conduct. *Id.* at 512.

The same was true in *Oregon Steel Mills, Inc.* In that case, the Supreme Court held that a decline in the market value of the plaintiff's stock was not a reasonably foreseeable result of the defendant accounting firm's negligent advice that caused a delay in offering the stock for sale. The court held that, because independent economic forces caused the loss, the defendant was not liable for it. In reaching that conclusion, the court relied on *Buchler*:

"Although the context of the alleged negligence was quite different, we see significant parallels between this

case and *Buchler*. In that case, this court held, as a matter of law, that a prison escapee's crimes committed two days after his escape were not 'reasonably foreseeable' consequences of a prison employee's failure to remove the keys from the prison van in which the inmate escaped. This court noted that '[an] intervening criminal instrumentality caused the harm and created the risk,' and although

" 'it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity.'

"316 Or at 511. Despite the fact that the state employee's action in leaving the keys in the van facilitated 'an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, [the employee's act] does not cause the harm so as to support liability for it.' 316 Or at 511-12.

"Similarly, in this case, defendant's conduct caused the delay in the offering that led to an 'unintended adverse result.' However, the intervening action of market forces on the price of plaintiff's stock was the 'harm-producing force,' and defendant's actions did not 'cause' the decline in the stock price so as to support liability for that decline. As a matter of law, the risk of a decline in plaintiff's stock price in June 1996 was not a reasonably foreseeable consequence of defendant's negligent acts in 1994 and early 1995."

*Oregon Steel Mills, Inc.*, 336 Or at 344-45 (brackets in original).

Thus, in *Oregon Steel Mills, Inc.*, the defendant's negligence caused a delay in a stock offering. However, the intervening "price decline affected all steel stocks and was unrelated to [the] defendant's misconduct." *Id.* at 344. Because there was no evidence that the defendant foresaw or should have foreseen that its conduct would result in the loss that the plaintiff suffered, that loss was not the reasonably foreseeable result of the defendant's conduct. *Id.* at 347. Thus, as it did in *Buchler*, the court in *Oregon Steel Mills, Inc.*, focused on whether the plaintiff's injury was a reasonably foreseeable *consequence* of the defendant's conduct.

We disagree, though, with the county's overarching argument that *Buchler* stands for the proposition that, in the absence of a special relationship creating an exception to the rule of nonliability set out in section 315, that rule always operates to cut off liability for failure to control the conduct of another person. In doing so, we adhere to our previous decisions in *Faverty*, *McAlpine*, *Washa*, *Sande*, and *Panpat*. However, our conclusion does not flow from stubborn resistance to reason. We acknowledge that our longstanding interpretation of *Buchler* is not free from doubt. We recognize that the court in that case referred to section 315 as a "rule of common law" that "applies in this case to support exclusion of liability because the actor is the defendant and [the] plaintiffs are members of the general public." *Buchler*, 316 Or at 505. However, as we noted in *McAlpine*, "*Fazzolari* itself recognized third-party liability under the principles of general foreseeability." *McAlpine*, 166 Or App at 481. Moreover, the Supreme Court has continued to apply the *Fazzolari* methodology, including the reasonable foreseeability test, in describing the elements of a common-law negligence claim. *See Oregon Steel Mills, Inc.*, 336 Or at 340.[6]

In light of its continuing adherence to *Fazzolari*, there is good reason to doubt that the Supreme Court would hold that, in the absence of a qualifying special relationship recognized by the *Restatement*, the intentional intervening criminal act of a third person always operates to cut off a defendant's liability for the harm resulting from that act. As noted, comment c to section 315 categorically states that the relationships between an actor and a third person that require the actor to control the conduct of the third person are stated in sections 316 to 319 and that the relationships

---

[6] In particular, the court stated:

"Following *Fazzolari*, this court has discussed a defendant's liability for harm that the defendant's conduct causes another in terms of the concept of 'reasonable foreseeability,' rather than the more traditional 'duty of care.' A claim for common-law negligence thus includes, among other elements, a foreseeable risk of harm to the plaintiff and conduct by the defendant that is unreasonable in light of that risk. *Solberg v. Johnson*, 306 Or 484, 490, 760 P2d 867 (1988). However, * * * if the plaintiff invokes a special status, relationship, or standard of conduct, then that relationship may 'create,' 'define,' or 'limit' the defendant's 'duty' to the plaintiff."

*Oregon Steel Mills, Inc.*, 336 Or at 340-41.

between an actor and another person that require the actor to control the conduct of third parties for the protection of the other person are stated in sections 314 A and 320. However, those particular exceptions are based on common-law rules that do not fully encompass the universe of statutory and other legally cognized relationships that pervade modern society. The "special relationship" construct adopted in *Fazzolari* encompasses more than the relationships recognized in section 315; it extends to any "status," "relationship," or "particular standard of conduct that creates, defines, or limits the defendant's duty." *Fazzolari*, 303 Or at 17. Here, for example, the record shows that the county assumed a relationship toward CP and his Union County victim whereby it undertook to officially investigate his alleged wrongdoing in Union County while he resided in Malheur County. Although plaintiffs do not specifically urge that that undertaking qualified as a special relationship within the meaning of *Fazzolari*, as we now explain, nevertheless it is relevant to the question whether plaintiff's general foreseeability argument survives summary judgment.[7]

As noted, plaintiffs' attorney submitted an affidavit in opposition to summary judgment stating that plaintiffs had retained an expert witness who was available and willing to testify. We assume that the expert would testify "on every issue on which summary judgment" was sought. *Panpat*, 188 Or App at 394. Thus, we assume that the expert

---

[7] The Supreme Court recently suggested in *Oregon Steel Mills, Inc.*, that the distinction between "special relationship" tort liability and "general foreseeability" tort liability may not be clear cut:

"Defendant suggests that *Fazzolari* divides the world of torts into two categories: (1) tort claims in which the plaintiff invokes a special relationship, liability depends solely on the scope of the duty associated with that relationship, and the foreseeability standard of *Fazzolari* plays no role; and (2) tort claims in which the plaintiff invokes no special relationship, and the general negligence standard of reasonable foreseeability applies. Our review of the cases does not reveal such a clear division between different types of tort claims and, in any event, this case does not require us to address that issue. Here, as noted, there was a special relationship between defendant and plaintiff that established the *existence* of a duty of care on the part of defendant. However, as discussed below, the *scope* of that particular duty in that particular relationship turns out to be limited to harms to plaintiff that were reasonably foreseeable."

*Oregon Steel Mills, Inc.*, 336 Or at 341 (emphasis in original; footnote omitted).

would testify that the county's handling of the abuse investigation fell below the applicable standard of care in the ways alleged in plaintiffs' first claim and that the county reasonably could have foreseen that, as a result of its conduct, it had created an unreasonable risk of harm to the Malheur County victims.

We agree with plaintiffs that if, as plaintiffs alleged in their first claim for relief, the juvenile department failed to (1) properly evaluate the charges against CP; (2) investigate the allegations in the police report to determine if other children were at risk; (3) initiate contact with CP within a reasonable period of time; or (4) bring CP within the jurisdiction of the court within a reasonable time, a trier of fact could find that it was reasonably foreseeable that CP would sexually abuse other children in the locale of his current residence. As the trial court noted, other factors also were at play in controlling the risk to other children, such as, for example, whether, even if the juvenile department had acted more expeditiously, the district attorney would have timely brought CP before the juvenile court, whether the juvenile court would have placed CP on a release agreement subject to effective release conditions, and whether, despite such conditions, CP would have offended against the Malheur County victims. However, those uncertainties did not make the risk that CP would abuse other children as a result of the county's conduct unforeseeable as a matter of law. To the contrary, any uncertainty as to whether other public actors would perform their functions did not diminish the reasonable foreseeability of harm to other children based on the county's failure to adequately perform its own responsibilities.

In *Buchler,* the Supreme Court indicated that the injury that befell the plaintiff was not a reasonably foreseeable consequence of the defendant's having carelessly left the keys in a vehicle, both because the car was not the mechanism of injury and because other means of facilitating the injury were equally possible. Here, by contrast, the juvenile department's failure to adequately perform the investigation of and response to the Union County sexual abuse incident that it undertook, if proved, created a risk that precisely the same type of injury would occur to other young children in the locale where CP resided. In that regard, the county was

not a mere unwitting facilitator; after having undertaken to investigate and respond to the abuse charges against CP, it nonetheless permitted him for an extended period of time to retain the very means—ongoing unsupervised freedom of movement—to commit the crimes against the Malheur County victims.

Moreover, unlike in *Oregon Steel Mills, Inc.*, where the delay in a stock offering did not create a risk of the general steel market decline that produced the plaintiff's loss, here, the intervening harm-producing force, CP's criminal conduct, was a risk that was directly related to the county's alleged failure to adequately investigate and respond to the Union County sexual abuse charges after having undertaken that responsibility. *See Panpat*, 188 Or App at 392 (holding that a third party's history of violence, at least insofar as it was known to the defendant, plays an important role in determining whether the harm was reasonably foreseeable); *see also Washa*, 159 Or App at 224 (same). We conclude that a trier of fact could find that, if the county was negligent in one or more of the ways alleged in plaintiffs' first claim, it was reasonably foreseeable that CP would sexually abuse other children in the locale of his current residence.

The question remains whether a trier of fact could find that the county's conduct was unreasonable in light of that risk. As discussed, in March 2000 the juvenile department accepted a referral to investigate the Union County sex abuse allegations against CP. Yet the juvenile department did not meet with CP and his parents in March 2000 as planned, and CP was not brought before the juvenile court on the Union County offense until December 2000. In the meantime, CP was unhampered by legal restraints from interacting with and abusing young children in Malheur County.

We conclude that a trier of fact could find that the county's conduct was unreasonable in light of the reasonably foreseeable risk that, if unrestrained, CP would sexually abuse children in the locale of his new residence.

To summarize, although plaintiffs did not establish that a special relationship existed between the county and the Malheur County victims before the juvenile court assumed jurisdiction over CP, a trier of fact could find that, if

one or more of the specifications of negligence in plaintiffs' first claim for relief were proved, there was a reasonably foreseeable risk of harm to the Malheur County victims and that the county's conduct was unreasonable in light of that risk. It follows that the trial court erred in granting partial summary judgment in favor of the county on that claim.

Reversed and remanded.