Argued and submitted December 19, 2005, on appeal, reversed and remanded;
cross-appeal dismissed as moot May 17, petition for review allowed
September 19, 2006 (341 Or 392)

Michael E. WALLACH,
*Respondent - Cross-Appellant,*

*v.*

ALLSTATE INSURANCE COMPANY,
an Illinois corporation,
aka Allstate Indemnity Company,
*Appellant - Cross-Respondent.*

99-3671-L-4; A124340

135 P3d 404

Edward H. Talmadge argued the cause for appellant - cross-respondent. With him on the briefs were Bernard S. Moore and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, PC.

G. Jefferson Campbell, Jr., argued the cause and filed the briefs for respondent - cross-appellant.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

**SCHUMAN, J.**

Defendant appeals from a judgment for plaintiff after a jury trial on plaintiff's claim for breach of an insurance contract. Plaintiff cross-appeals, arguing that the trial court erred in determining the amount of attorney fees it awarded him. We conclude that the trial court did not err in granting plaintiff's motion for partial summary judgment on the issue of defendant's liability to plaintiff for injuries caused by the conduct of the driver of a so-called "phantom vehicle," but that the court's jury instruction regarding the degree, if any, to which that liability encompassed injuries that plaintiff incurred in subsequent events, was prejudicially erroneous. We therefore reverse and remand for a new trial on the issues remaining after summary judgment, and we dismiss the cross-appeal as moot.

The following facts are not disputed. In October 1997, as plaintiff was driving through a construction area on Interstate 5 between Grants Pass and the Rogue River in Jackson County, a truck suddenly entered his lane, causing him to swerve erratically and hit a guardrail. Plaintiff caught his arm in the steering wheel and was thrown against the door. He reported the accident to the authorities and to defendant, his insurer, but was unable to identify the owner of the truck.

Subsequently, plaintiff submitted insurance claims to defendant for various upper-body injuries and pain problems under his policy's personal injury protection (PIP) and uninsured motorist (UM) provisions. The PIP provision promised benefits to plaintiff on proof of "bodily injury arising from the use of a motor vehicle" without consideration of fault. *See also* ORS 742.520 (describing statutory requirements for PIP coverage). According to the UM provision, defendant promised to "pay those damages which an insured person is legally entitled to recover from the owner of an uninsured auto because of bodily injury sustained by an insured person." Under the policy, one type of "uninsured auto" is "a phantom motor vehicle," defined as a vehicle that causes bodily injury to the insured person or property damages to the insured auto without physically contacting either

and whose owner or operator is "not ascertainable." Defendant paid some benefits under the PIP provision but denied the UM claim.

Between the time defendant denied plaintiff's claim and the commencement of this action, plaintiff was involved in two subsequent car accidents, which, according to plaintiff, worsened the injuries that he suffered in the October 1997 accident.

Plaintiff filed this action in October 1999, alleging that defendant breached the PIP and UM provisions of the insurance contract and that it owed him benefits for injuries and chronic pain due to the October 1997 accident, as well as for the later aggravation of those injuries. The trial court granted summary judgment to plaintiff on the issue of defendant's liability under the insurance policy, and a trial on damages followed. Both parties presented expert evidence concerning the extent and severity of plaintiff's injuries. The jury returned a verdict awarding plaintiff $50,000 in damages under the UM provision and $25,000 under the PIP provision. The trial court entered a supplemental judgment awarding plaintiff attorney fees and costs under ORS 742.061.

Defendant now appeals, asserting that the trial court erred in granting plaintiff's motion for partial summary judgment, in certain evidentiary rulings, and in instructing the jury concerning how it could determine the extent of defendant's liability for injuries incurred subsequent to the phantom vehicle accident. Plaintiff cross-appeals from the supplemental judgment, asserting that the court's attorney fee determination was based on an improper standard. We conclude that the trial court did not err in granting partial summary judgment to plaintiff on the issue of defendant's liability for the phantom vehicle accident, but that the court's contested jury instruction constituted prejudicial error. Because that error requires a new trial on all issues except defendant's liability for the phantom vehicle driver's conduct, we do not reach defendant's other assignments of error, and we dismiss plaintiff's cross-appeal as moot.

■ We first consider whether the trial court erred in granting plaintiff's motion for partial summary judgment on

defendant's liability under the UM provision.[1] The insurance policy provides UM coverage if plaintiff is "legally entitled to recover [damages] from the owner [of the phantom vehicle]."[2] On appeal, defendant asserts that the trial court erred because the record, viewed in the light most favorable to the nonmoving party, ORCP 47 C, discloses a genuine issue of material fact concerning whether plaintiff was himself so negligent as to negate the conclusion that he would have been "legally entitled" to recover anything from the phantom driver. To support that argument, defendant relies on two sources. First, it relies on the bare allegation in its answer to plaintiff's complaint that plaintiff was negligent. However,

> "an adverse party may not rest upon the *mere allegations* or denials of that party's pleading, but the adverse party's response, by affidavits, declarations or as otherwise provided in this section, must set forth *specific facts* showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

■ ORCP 47 D (emphasis added). Second, defendant relies on statements that plaintiff made in his deposition, which, according to defendant, establish "that there were questions regarding his speed." The statements to which defendant refers are these:

> "[Plaintiff:] I was going right around the bend. It bends to the right a little bit. Next to the river there. And as I was going this, you know, *the speed that they set you at*, this guy in this white, they call it a bottom belly. I don't know why. Just zipped right in front of us. I mean it was so close, I saw his face.

> "He just, that's how close he came with his truck. We got caught in his draft. And I tried to grab control of the car. Like I said, the truck and, like I said, my arm got caught in

---

[1] Although the arguments in the parties' memoranda in support of, and in opposition to, plaintiff's motion for partial summary judgment focus on the UM provision, the motion seeks, and the court rendered, a ruling on "all issues of liability." On appeal, defendant abandons whatever argument it might have made regarding liability under the PIP provision.

[2] The parties agree that the UM provision parallels the legislative requirements for UM insurance set out in ORS 742.504(1), (2). *See generally Vega v. Farmers Ins. Co.*, 323 Or 291, 918 P2d 95 (1996) (analyzing requirements of ORS 742.504).

the steering wheel. It flipped around this way. I grabbed it with my left arm, Larry was asking me to grab control of the car. I did. He was asking me to slow down. I was trying to slow down but my father-in-law always told me don't brake, just ease off the brake, ease off and go, that's what I was trying to do.

"[Counsel:]   What do you think your speed was as he first passed you?

"[Plaintiff:]   I'm guessing, just guessing.

"[Counsel:]   That's fine.

"[Plaintiff:]   *About 25.*"

(Emphasis added.) We are unable to discern how those statements, standing alone, raise an issue of material fact regarding plaintiff's negligence. Had defendant offered evidence or testimony suggesting that driving 25 miles per hour where the accident occurred, or that "eas[ing] off" instead of braking, was unreasonable under the circumstances, we might conclude that a fact issue exists. Without such evidence or testimony in the summary judgment record, we do not. The court did not err in granting plaintiff's motion for partial summary judgment on the issue of the phantom vehicle's negligence (and hence defendant's liability) and in limiting the trial to the remaining issues: the extent of plaintiff's injuries and whether defendant's liability encompassed aggravation injuries incurred in later accidents.

██  In instructing the jury on the latter issue, however, the trial court erred. After rejecting proposals from both parties regarding how to instruct with respect to injuries that plaintiff incurred in accidents subsequent to the one involving the phantom vehicle, the court told the jury,

"The contract entered into by the plaintiff and the defendant sets forth that the defendant will provide coverage for all the natural, direct and proximate consequences of the wrongful acts of the driver of the phantom vehicle.[3] If you find that the plaintiff was injured by those acts in the

---

[3] The contract does not contain the terms "natural, direct and proximate consequences." It provides only that defendant will pay "damages which an insured person is legally entitled to recover from the owner or operator of [a phantom] vehicle because of bodily injury sustained by an insured person."

accident of October 24th, 1997, and then had a subsequent accident in which the plaintiff suffered further injury which would not have occurred but for the original injury, the defendant may then be held liable for the enhancement or aggravation of plaintiff's injuries caused by the subsequent accident.

"Defendant's liability would apply only to the injuries you attribute to the accident of October 24th, 1997, and to any enhancement or aggravation of those injuries, not to any new injuries suffered by plaintiff in any subsequent accident."

We will reverse the trial court based on a jury instruction if we can say that the instruction probably created an erroneous impression of the law in the minds of the jurors and that it affected the outcome of the case. *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970); *Maas v. Willer*, 203 Or App 124, 129, 125 P3d 87 (2005), *rev den*, 340 Or 411 (2006). The disputed instruction meets both elements of that formulation.

■■ Initially, the instruction is confusing. It appears to propose two alternative causation rules: proximate cause in the first paragraph and "but-for" causation in the second. The two are not synonymous. "But-for" causation occurs when "the defendant's conduct was, as a factual matter subject to pleading and proof, one of the 'causes' of the plaintiff's injury[.]" *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 339, 83 P3d 322 (2004). It encompasses all events that would not have occurred "but for" the occurrence of the allegedly culpable conduct of the defendant, regardless of how tenuous the chain of causation. Thus, in the example familiar to every survivor of a first-year torts class, the Long Island Railroad Company's employee "caused" Mrs. Palsgraf's injury in the "but for" sense because, if the employee's allegedly negligent conduct had not caused a passenger to drop a package that contained fireworks, the fireworks would not have exploded; if the fireworks had not exploded, the reverberations from the explosion would not have caused scales located some distance down the platform to fall; and if the scales had not fallen, Mrs. Palsgraf would not have been injured by them. *Palsgraf v. Long Island R.R. Co.*, 248 NY 339, 162 NE 99 (1928). The events "proximately

caused" by allegedly culpable conduct, on the other hand, are far less remote. "Proximate causation" occurs when "the defendant's conduct 'has been so significant and important a cause [of the plaintiff's injury] that the defendant should be legally responsible' * * *. W. Page Keeton, *Prosser and Keeton on Torts* 273 (5th ed 1984)[.]" *Oregon Steel Mills, Inc.*, 336 Or at 339 (first set of brackets in original).

Thus, the trial court's instruction appears to propose inconsistent standards. It does so, however, in such a way as to suggest to the jury that "but for" causation is the last word; as presented, the second paragraph appears to be an attempt to explain, in lay terms, the legal terms of art ("natural, direct and proximate consequences") in the first paragraph. Thus, the instruction is wrong because it permits the jury to impose liability on defendant for harm for which, under the proper standard, defendant would not be liable.

Further, even if the instruction could be read to limit defendant's liability to events "proximately" caused by the phantom vehicle, that standard would also be erroneous. A "proximate cause" instruction would tell the jury to examine the phantom vehicle driver's conduct, and consequently defendant's liability, from a retrospective perspective, that is, based on the jury's assessment of the probability of what actually happened. Oregon courts have rejected that approach in favor of a prospective one, that is, one based on the jury's assessment of what a defendant should reasonably have foreseen to be the consequences of his or her unreasonable conduct. *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 13, 17, 734 P2d 1326 (1987). The two perspectives are not always the same. Thus, the correct instruction would have told the jury that defendant could be liable only for the injuries that were the reasonably foreseeable consequences of the phantom vehicle driver's unreasonably risky conduct. *Id.*; *Oregon Steel Mills, Inc.*, 336 Or at 341-42; *Bertram v. Malheur County*, 204 Or App 129, 140, 129 P3d 222 (2006).[4]

---

[4] Defendant assigns error only to the trial court's jury instruction. It does not argue that the jury should not have been presented with the question of whether defendant's liability includes damages resulting from aggravation to plaintiff's injuries occurring in later accidents, and we do not decide that issue. *See Buchler v. Oregon Corrections Div.*, 316 Or 499, 514, 853 P2d 798 (1993) (in some

■■ Reversal of the jury verdict because of an erroneous instruction is required only when we are "able to conclude, from the record, that the error 'substantially affect[ed]' the rights of the losing party." *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173, 61 P3d 928 (2003) (quoting ORS 19.415(2)) (brackets in *Shoup*). In this case, we conclude that the instructional error warrants reversal. Throughout the trial, the jury heard testimony that plaintiff received treatment for the phantom car injuries and for later aggravation of those injuries. The instruction, delivered just before summation, advised the jury that defendant could be liable for the injuries inflicted in the phantom vehicle accident and for any aggravation of those injuries that occurred because of later accidents. The parties' summations reveal strategic attempts to recount the evidence and to position their cases under the erroneous version of the law that had just been planted in the jurors' minds. The instruction did not contain an alternative, correct standard that the jury could have applied. The correct standard would likely have yielded a different outcome.

Finally, defendant assigns error to several evidentiary rulings by the trial court. We cannot say with any confidence that, on remand, the issues raised by those rulings will recur. We therefore do not address them.

Because we affirm the partial summary judgment on the issue of defendant's liability for the conduct of the phantom vehicle's driver, we remand for a new trial on the remaining issues: the extent and amount of that liability. *Wolf v. Nordstrom*, 291 Or 828, 835, 637 P2d 1280 (1981).

On appeal, reversed and remanded; cross-appeal dismissed as moot.

---

circumstances involving intervening causation, no reasonable juror could find foreseeabililty).