Argued January 10, affirmed February 26, 1969

STUBBS, *Respondent, v.* MASON,
*Appellant.*

450 P. 2d 773

William B. Wyllie, Salem, argued the cause for appellant. On the brief were Rhoten, Rhoten & Speerstra, Salem.

William T. Hollen, Newport, argued the cause and filed a brief for respondent.

Before Sloan, Presiding Justice, and Goodwin and Holman, Justices.

GOODWIN, J.

Defendant appeals from a judgment for the plaintiff in an action for damages for injuries sustained in a rear-end automobile collision. The facts of the accident are not remarkable, and the only question of substance is whether there was sufficient evidence to submit to the jury the plaintiff's allegation that her injuries had resulted in the "aggravation of a preexisting osteoarthritis."

The defendant concedes that "some injury" was sustained as the result of the collision, and that the plaintiff had experienced some radiating pain from arthritic changes in the cervical spine prior to the accident. The plaintiff then undertook to prove the aggravation of her arthritic condition, and that the aggravation was the result of the accident.

The plaintiff's principal medical expert testified that when he made his written report he had been of the opinion that the trauma *probably* had aggravated her arthritic complaints. The report so stated. At the trial, however, he testified that his opinion had

changed, and that the trauma only *possibly* aggravated the arthritis. The defendant contends that this testimony reduced the medical evidence on the arthritis complaint from the probable to the possible and thereby rendered the medical evidence insufficient as a matter of law to support the submission of the claimed aggravation to the jury.

■ If the record as a whole revealed nothing more than a mere possibility that the trauma had caused an aggravation of the plaintiff's pre-existing arthritis, the trial court would have been required to withdraw that particular allegation of injury from the jury's consideration. See *Howerton v. Pfaff,* 246 Or 341, 425 P2d 533 (1967); *Washburn v. Simmons,* 213 Or 418, 323 P2d 946, 325 P2d 255 (1958).

Upon examination of all the medical evidence, however, we find something more. The plaintiff's treating physician testified as follows:

"A: If a shoulder joint is injured regardless of the cause or the mechanism but if it's severe the tears and strains and sprains of the ligaments and the muscles and the capsule of the joint occur, reflexion changes due to pain and due to the limited motion that occurs for a time develop generally resulting in the establishment of a chronic bursitis in a general sort of way. Most people understand the word bursitis. And, the second thing that happens in an individual here who has the chronic degenerative changes in the vertebra and intervertebral disk of the neck is that pain, radicular pain, develops. The so-called herniated vertebral disk, although the vertebra may not actually herniate, it may simply degenerate and the nerves may become irritated and pain develops. When this pain develops, the same syndrome can develop, a shoulder-hand syndrome. There may never be a prior injury; so shoulder-hand syndrome can develop,

either something that develops in the neck or it may develop as a result of injury to the shoulder itself. The end results are the same, that is, most people end up even after a good deal of medical treatment and a good deal of physiotherapy, most people end up with a shoulder joint that isn't quite as good as it was before. And, many people end up with some limitation of motion and some degree of discomfort."

■ The foregoing testimony, taken together with the plaintiff's own description of her condition before and after the accident, can be summarized as providing evidence from which the jury could believe (1) the plaintiff's shoulder was not as good after the accident as it was before; (2) the disability was caused either by a trauma-induced bursitis or by a trauma-induced aggravation of the existing arthritic condition, or both; (3) it is impossible to state with certainty that either of the two explanations exclusively would account for the plaintiff's disability; (4) in either event, however, the defendant's negligence caused the disability. Therefore, if the jury believed that the plaintiff's arthritis had been aggravated, it had a right to believe that the defendant's negligence caused that aggravation.

The limiting word, "possible," in the doctor's opinion did not apply to the causal connection between the defendant's negligence and the plaintiff's present disability; that connection had been established with more than adequate certainty to go to the jury. The limiting word "possible," applied merely to the doctor's inability to say with any degree of certainty how much of her present disability was caused by her old arthritic condition, how much was caused by a traumatic aggravation of that arthritis, and how much was caused by bursitis. There was, however, other evi-

dence from which the jury could find that the pre-existing arthritis had worsened after the accident, and the evidence as a whole, therefore, was sufficient to permit the jury to find that this worsening, or aggravation, had, in fact, occurred. There was no error in refusing to withdraw the issue of aggravation from the jury.

■ Another assignment of error asserts that the trial court abused its discretion in denying a motion for a new trial based upon an affidavit asserting that newly discovered evidence would prove that the plaintiff's complaints were not caused by the accident. The affidavit asserts that X-rays taken by the defendant's medical expert revealed that the plaintiff had undergone a myelogram; that further investigation had disclosed that the plaintiff had been examined at the University of Oregon Medical School shortly after the accident; and that she had falsely stated to the defendant's doctor that she had not seen any other doctors (other than her treating physicians in this case) between the date of the accident and the date of her examination. The affidavit reveals on its face that the defendant did not exhibit the degree of diligence necessary to undergird a motion for a new trial. If the defendant's doctor could see on his own X-rays evidence of a myelogram, there was nothing to keep the defendant from making the kind of investigation before trial which evidently was made after trial. There clearly was no abuse of discretion in the matter.

Affirmed.