Argued and submitted January 3, 2007, decision of Court of Appeals affirmed;
judgment of circuit court reversed, and case remanded to circuit court for further
proceedings March 20, 2008

Michael E. WALLACH,
*Petitioner on Review,*

*v.*

ALLSTATE INSURANCE COMPANY,
an Illinois corporation,
aka Allstate Indemnity Company,
*Respondent on Review.*

(CC 99-3671-L4(7); CA A124340; SC S053702)

180 P3d 19

G. Jefferson Campbell, Medford, argued the cause and filed the brief for petitioner on review.

Edward H. Talmadge, of Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, PC, Medford, argued the cause and filed the brief for respondent on review. With him on the brief was Bernard S. Moore, Medford.

KISTLER, J.

Durham, J., dissented and filed an opinion.

**KISTLER, J.**

Plaintiff suffered injuries in three separate automobile accidents. During the trial on the first accident, the court instructed the jury that it could hold defendant Allstate Insurance Co., responsible for any "enhancement or aggravation of plaintiff's injuries caused by the subsequent accident[s]" if the enhancement or aggravation would not have occurred but for the first accident. On appeal, the Court of Appeals held that the trial court erred in giving that instruction, reversed the trial court's judgment, and remanded for a new trial. *Wallach v. Allstate Ins. Co.*, 206 Or App 137, 135 P3d 404 (2006). We allowed plaintiff's petition for review and now affirm the Court of Appeals decision.

Plaintiff purchased automobile insurance from defendant Allstate. Afterwards, plaintiff was involved in three automobile accidents. The first accident occurred on October 24, 1997. An unidentified truck (referred to as a "phantom vehicle" in Allstate's policy) caused plaintiff's vehicle to swerve, injuring plaintiff. Because the person driving the truck was unidentified and thus unavailable, plaintiff sought to recover his damages from Allstate under both the uninsured motorist (UM) provision[1] and the personal injury protection (PIP) provision[2] of his policy. Allstate denied liability under both provisions, and plaintiff filed this action against Allstate on October 22, 1999, alleging that Allstate had breached those provisions.

The second accident occurred on August 6, 1999, a few months before plaintiff filed this action. Plaintiff had stopped at a red light when another car "rear-ended" his car. The third accident occurred on August 2, 2002, before the trial on this action began. Plaintiff had stopped at a red light when yet another car "rear-ended" his car.

---

[1] Under the UM provision, Allstate promised to pay plaintiff "those damages which an insured person is legally entitled to recover from the owner or operator of [a phantom vehicle] because of bodily injury sustained by an insured person."

[2] Under the PIP provision, Allstate promised to pay plaintiff certain specified expenses that either were incurred within a year of the accident or for a limited period of time.

At the trial on the first accident, plaintiff contended that Allstate was liable for the injuries resulting from the first accident and also for any aggravation of those injuries resulting from the second and third accidents.[3] Plaintiff submitted a special jury instruction to that effect,[4] and Allstate filed a written objection. Among other things, Allstate contended that the trial court should not give plaintiff's requested instruction because "the subsequent motor vehicle accidents are not accidents which would have occurred but for the original injury" and also because it was "not foreseeable that a plaintiff would meet with subsequent motor vehicle accidents." Finally, Allstate argued that plaintiff's requested instruction would make it "liable for injuries attributable to the second motor vehicle accident for which [it] is not liable."

Despite that objection, the trial court gave an instruction that repeats, in substantial part, the special jury instruction that plaintiff had requested. The trial court instructed the jury:

"The contract entered into by the plaintiff and the defendant sets forth that the defendant will provide coverage for all the natural[,] direct and proximate consequences of the wrongful acts of the driver of the phantom vehicle.

"If you find that the plaintiff was injured by those acts in the accident of October 24th, 1997 and then had a subsequent accident in which the plaintiff suffered further injury which would not have occurred, but for the original injury, the defendant may then be held liable for the enhancement

[3] On review, Allstate does not dispute that it was liable under the UM and PIP provisions for the injuries that plaintiff suffered as a result of the first accident. The only issue is whether Allstate is responsible for aggravation damages resulting from the second and third accidents.

[4] Plaintiff's requested jury instruction number 10 stated:

"In an action to recover damages for personal injuries the person wrongfully causing the personal injuries of another is liable for all the natural, direct and proximate consequences of his wrongful act or omission. When the injured person meets with a subsequent accident which would not have occurred but for the original injury, the defendant may be held liable for the enhancement of plaintiff's damages caused by the subsequent accident. In this case, therefore, if you determine that any of the Plaintiff's injuries resulting from any subsequent motor vehicle accident after October 24, 1997 would not have occurred but for the Plaintiff's original injuries sustained in the October 24, 1997 accident, then you may award Plaintiff damages for any such enhancement or aggravation to the Plaintiff caused by any such subsequent accident."

or aggravation of plaintiff's injuries caused by the subsequent accident.

"The defendant's liability would apply only to the injuries you attribute to the accident of October 24th, 1997 and to any enhancement or aggravation of those injuries, not to any new injuries suffered by plaintiff in any subsequent accident."

After the court gave that instruction, Allstate excepted to it, reasoning that "this is not the type of case where the first accident caused the second and third accidents; and, therefore, that instruction should not have been given[.]" The jury returned a verdict awarding plaintiff $50,000 in damages for Allstate's breach of the UM provision and $25,000 in damages for Allstate's breach of the PIP provision.

Allstate appealed from the resulting judgment, arguing, among other things, that the trial court erred in instructing the jury that Allstate was liable to the extent that the second and third accidents aggravated any injuries that plaintiff sustained in the first accident. The Court of Appeals agreed that the instruction was erroneous. It reasoned that the instruction was either confusing or incorrect because it appeared to permit the jury to award damages for injuries arising out of the second and third accidents if the jury found "but for" causation only. *Wallach*, 206 Or App at 144. The court also noted that the instruction referred to proximate cause when it should have referred to foreseeability. *Id.* Because the court concluded that those errors were not harmless, it reversed the trial court's judgment and remanded for further proceedings. *Id.* at 145.

■ On review, plaintiff argues that the Court of Appeals erred in three respects. He contends initially that Allstate failed to preserve its objection to the instruction. Plaintiff recognizes that Allstate objected to the instruction. He contends, however, that Allstate did not object on the grounds on which the Court of Appeals relied. As noted above, however, Allstate filed a written memorandum objecting to plaintiff's special requested jury instruction on the ground, among other things, that the second and third accidents were not foreseeable. As also noted, the trial court's instruction tracked in substantial part the special requested instruction

to which Allstate objected, and Allstate renewed its objection when it excepted to the instruction that the trial court gave. Allstate preserved the issues that it has raised on appeal and on review. See *Beall Transport Equipment Co. v. Southern Pacific*, 335 Or 130, 137, 60 P3d 530 (2002) (describing preservation requirements for jury instructions).

 Having concluded that Allstate preserved its objections to the instruction, we turn to the question whether that instruction correctly stated the law. The instruction consists of three sentences. The first sentence purports to recite the terms of the insurance contract under which plaintiff's claims against Allstate arise.[5] The second sentence sets out the operative legal principle; it tells the jury what it must find before Allstate "may * * * be held liable." That sentence provides:

> "If you find that the plaintiff was injured by those acts in the accident of October 24th, 1997 and then had a subsequent accident in which the plaintiff suffered further injury which would not have occurred, but for the original injury, the defendant may then be held liable for the enhancement or aggravation of plaintiff's injuries caused by the subsequent accident."

The third sentence limits the second. It clarifies that Allstate is liable for the injuries resulting from the first accident and for "any enhancement or aggravation of those injuries, [but] not [for] any new injuries suffered by plaintiff in any subsequent accident."

The trial court's instruction is erroneous in two separate but related respects. First, the instruction is at odds with the general rule that a defendant is liable only for the foreseeable consequences of his or her negligence. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (holding that, unless a status, relationship, or standard of conduct "creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting

---

[5] The first sentence recites that Allstate and plaintiff entered into a contract under which Allstate promised to "provide coverage for all the natural[,] direct and proximate consequences of the wrongful acts of the driver of the phantom vehicle." It is unclear from the court's instructions whether the first sentence refers to the UM provision, the PIP provision, or both. The instruction does not refer specifically to either provision, and neither provision contains the promise that the instruction recites.

from [the] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff").[6] Under the trial court's instruction, the jury could hold Allstate liable for all aggravation damages that were causally connected to the first driver's negligence no matter how unforeseeable those damages were. Such unlimited liability is contrary to Oregon negligence law.

Not only is the trial court's instruction contrary to the general rule on negligence, but it is also inconsistent with the specific application of that rule in *Ferrante v. August*, 248 Or 16, 432 P2d 167 (1967). In *Ferrante*, the plaintiff had injured her back in an automobile accident as a result of the defendant's negligence. *Id.* at 17. Several months later, as her back was improving, she "felt a very sharp pain in her back as she was getting out of her chair." *Id.* at 18. The plaintiff's doctor testified that the injury had weakened the plaintiff's back and that the later injury she experienced on getting out of the chair was a foreseeable consequence of her weakened back and thus the earlier accident. *Id.*

■ On that evidence, this court held that the plaintiff could recover both for the injury that she originally suffered as a result of the accident and also for the later back sprain. *Id.* at 22-23. The court reasoned that, given the doctor's testimony, the jury reasonably could find that "but for the original injury the [later] back sprain * * * would not have occurred and that the latter injury was the natural and probable consequence of the former." *Id.* at 22; *see also Restatement (Second) of Torts* § 460 (1965) (stating similar rule).[7] Although we would now use the phrase "foreseeable consequence" rather than "natural and probable consequence," *see Fazzolari*, 303 Or at 14 (explaining that foreseeability rather

---

[6] Plaintiff does not argue that a status, relationship, or standard of conduct permitted the jury to hold Allstate liable for any aggravation damages that resulted from the second and third accidents without regard to whether those damages were a foreseeable consequence of the first accident.

[7] Section 460 of the *Restatement* provides:

"If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment."

than proximate cause is the measure of a defendant's liability), the important point is that the court in *Ferrante* not only required a causal connection between the original negligent act and the later injury that resulted in increased pain but it also required that the later injury be a foreseeable consequence of the original negligence. The trial court's instruction in this case erroneously omitted that limitation.

■ ■ The instruction was incorrect in a second, related respect. Under Oregon law, a tortfeasor is responsible to the extent that his or her negligence aggravates a preexisting condition. *See Stubbs v. Mason*, 252 Or 547, 551, 450 P2d 773 (1969) (so holding); *Dodson v. Lemon*, 197 Or 444, 449, 253 P2d 900 (1953) (same). It follows that, in this case, if the second tortfeasor aggravated a preexisting condition and if the second accident was not a foreseeable consequence of the first, then the law allocates responsibility for any aggravation of plaintiff's preexisting condition to the second tortfeasor, not the first. The trial court's instruction, however, told the jury that it could hold the first tortfeasor liable for any aggravation damages that the second accident caused without regard to whether the second accident was a foreseeable consequence of the phantom driver's negligence.

Plaintiff has not argued that either the second or third accident was a foreseeable consequence of the phantom driver's negligence, nor is there any evidence in the record that would permit a reasonable juror to draw that inference. Accordingly, we agree with Allstate that, on this record, the trial court should not have instructed the jury that it could hold Allstate liable for any aggravation damages resulting from the second and third accidents. We note that the other courts that have considered this issue agree that, when the second accident is not a foreseeable consequence of the first, the defendant involved in the first accident is not liable for any aggravation of the plaintiff's injuries that the second accident causes. *See, e.g., Hashimoto v. Marathon Pipe Line Co.*, 767 P2d 158, 160-61 (Wyo 1989); *Bruckman v. Pena*, 29 Colo App 357, 487 P2d 566 (1971); *Armstrong v. Bergeron*, 104 NH 85, 178 A2d 293 (1962) (all so holding).[8]

---

[8] This case is a relatively common successive accident case in which the two accidents are not causally related. As explained above, in such cases, the first

■ The final issue is whether the erroneous instruction substantially affected Allstate's rights. *See* ORS 19.415(2) (providing that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party"). On that issue, we note that the trial court's instruction gave the jury the wrong legal rule to apply. The instruction told the jury that it could hold Allstate liable for damages for which the jury could not, on this record, hold it legally responsible. Allstate observes that, when an instruction tells the jury to apply the wrong legal rule and the erroneous instruction permits the jury to reach an incorrect result, this court consistently has held that the error substantially affects the party's rights. *See, e.g., Honeywell v. Sterling Furniture Co.*, 310 Or 206, 211-12, 797 P2d 1019 (1990) (instructing jury that part of a punitive damages award could go to a crime victim's fund encouraged jury to award damages for the wrong reason); *Fairbrother v. Rinker*, 274 Or 525, 529-30, 547 P2d 605 (1976) (instruction that erroneously permitted jury to consider defendant's financial condition in assessing damages was reversible error because it could have prejudiced plaintiff's chance of recovery); *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970) (stating general principle).

Plaintiff responds that this court's decision in *Shoup v.Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), altered that longstanding rule. Plaintiff contends that, after *Shoup*, an appellate court must affirm a jury's verdict unless the party who objected to the instruction can demonstrate that the erroneous instruction affected the verdict. In that connection, plaintiff notes that the jury could have based its damages award in this case solely on the injuries resulting from the first accident without including any aggravation

tortfeasor ordinarily will be responsible for the damages that the first accident causes, and the second tortfeasor will be responsible for the damages that the second accident causes (including damages for aggravating a preexisting injury). When there is a disputed issue of fact, the jury will have to determine which injuries each accident caused. When, in the less frequent successive accident case, the second accident is a foreseeable consequence of the first, the first tortfeasor will be responsible for all the damages that both accidents cause (not just aggravation damages), subject to whatever statutory or common-law rights of contribution the first tortfeasor might have against the second tortfeasor. *See* Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 4 *Harper, James and Gray on Torts* § 20.3, 138 (3d ed 2007) (stating general rule).

damages from the second and third accidents. Plaintiff contends that, because Allstate cannot show otherwise, this court must affirm the jury's verdict even though the court told the jury to apply an incorrect legal rule in determining the amount of plaintiff's damages.

The holding in *Shoup* is not as far reaching as plaintiff perceives. The plaintiff in *Shoup* alleged three specifications of negligence. 335 Or at 166-67. The trial court submitted all three specifications to the jury, even though it should have granted the defendant's motion to withdraw one of those specifications. *Id.* at 167-68. The trial court then correctly instructed the jury on negligence, after which the jury returned a general verdict finding the defendant negligent. *Id.* at 167.

The verdict form did not identify which specification or specifications the jury relied on in finding the defendant negligent, and the question before this court was whether it could say that the trial court's error in submitting one of three specifications of negligence to an otherwise correctly instructed jury substantially affected the defendant's rights. Faced with that question, this court held that, without some basis for saying that a correctly instructed jury had relied solely on the invalid specification of negligence, it could not say that the error had substantially affected the defendant's rights; that is, the court could not say that the jury had not based its verdict on the other two specifications of negligence that were properly before it. *Id.* at 176, 179.[9]

This court was careful in *Shoup* to distinguish instructional error from the particular species of error that was at issue in that case. In reviewing prior cases, this court observed that, although its earlier decision in *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 957 P2d 147 (1998), may have stated the standard for reversible error too broadly, the decision had correctly held that the instructional error in

---

[9] The court framed its holding in *Shoup* narrowly. It stated:

"[W]e hold today that appellate courts, to act within statutory limitations, may not apply the 'we can't tell' rule to order a new trial in a case involving a judgment on a general verdict based on multiple specifications, one of which is invalid, if there is evidence to support another, valid specification."

335 Or at 176.

that case had substantially affected the plaintiff's rights. *Shoup*, 335 Or at 172 n 2. After questioning the way in which the court had articulated the legal standard in *Hernandez*, the court stated in *Shoup*: "We do not, however, question the conclusion reached by this court in *Hernandez*. The error in jury instructions at issue in *Hernandez* was 'reversible' under ORS 19.415(2)." *Id.*

Because the instructional error in *Hernandez* marks the limit of *Shoup*'s holding, we describe that case briefly. *Hernandez* was a products liability case. The defendant in that case raised the affirmative defense of comparative fault, alleging that the plaintiff had been negligent in ten respects. 327 Or at 102-03. The plaintiff requested an instruction that would have told the jury that certain types of negligence are not sufficient to establish comparative fault in a products liability case. *Id.* at 103-04. Specifically, the instruction would have told the jury that negligence that consists of an "unobservant, inattentive, ignorant, or awkward failure to discover or to guard against the defect that goes toward making the product dangerously defective" is not sufficient to establish comparative fault. *Id.* at 104.

The trial court refused to give the requested instruction, and the jury returned a verdict finding that the plaintiff was 50.5 percent and the defendant 49.5 percent at fault. *Id.* at 104-05. On review, this court held that the trial court erred in refusing to give the requested instruction and that the error substantially affected the plaintiff's rights. *Id.* at 112-13. On the latter point, the court observed that nine of the ten allegations of negligence alleged that the plaintiff had "knowingly encountered" a risk of injury and that those allegations, if proved, would be sufficient to establish comparative fault. *Id.* at 110-11. One specification, however, alleged only that the plaintiff had acted negligently in standing on a slippery surface (sawdust) when he used the defendant's product, and the court observed that a properly instructed jury could have found that the plaintiff's negligence in standing on the sawdust consisted only of an "unobservant, inattentive, ignorant or awkward failure" to discover or guard against the defective product. *Id.* at 112.

Because the trial court refused to give the plaintiff's requested instruction, the jury applied an incomplete and thus inaccurate legal rule to the facts, which permitted the jury to reach an erroneous result. That was sufficient, this court held in *Hernandez* and reaffirmed in *Shoup*, to say that the instructional error substantially affected the plaintiff's rights and required reversal. *Hernandez*, 327 Or at 112-13; *Shoup*, 335 Or at 172 n 2. That was true even though the jury in *Hernandez* properly could have based its verdict on the other allegations of negligence and the plaintiff in *Hernandez* could have memorialized the effect of the trial court's refusal to give his requested instruction by asking the jury to specify which, if any, of the defendant's allegations of negligence it relied on in determining the parties' respective fault.

In *State v. Pine*, 336 Or 194, 82 P3d 130 (2003), the court confirmed the distinction that it noted in *Shoup*. In *Pine*, this court held that a defendant could be held liable for third-degree assault only if he or she "caused" physical injury to the victim; that is, the "defendant either must have inflicted physical injury directly himself or herself, or must have engaged in conduct so extensively intertwined with infliction of the injury that such conduct can be found to have produced the injury." *Id.* at 207. The trial court, however, had instructed the jury that a defendant could be guilty of third-degree assault if the defendant merely had aided another person who caused physical injury to the victim. *Id.* at 209. Under the trial court's instruction, the jury could have found the defendant in *Pine* guilty of third-degree assault without finding the direct causal connection that the third-degree assault statute required.

On review, the state argued that, under *Shoup*, this court should affirm even though the statute required that the defendant cause the physical injury. *Id.* at 199. The state reasoned that there was evidence from which the jury could have found that the defendant had directly inflicted the injury rather than merely aiding another person who inflicted the injury. *Id.* It followed from *Shoup*, the state reasoned, that the defendant could not establish that the erroneous instruction had substantially affected his rights. *Id.*

In rejecting the state's argument, this court declined to rely on "procedural differences between civil and criminal proceedings." *Id.* at 200. Rather, it relied on "a more fundamental reason" to distinguish the effect of the error in *Shoup* from the effect of the instructional error before it. *Id.* The court reasoned that, if the jury had believed the defendant's version of the facts rather than the state's, the instruction permitted the jury to convict the defendant in violation of the statute defining the crime of third-degree assault. *Id.* Accordingly, the court held that the instructional error required reversal. *Id.* at 210.

■ The instruction in *Pine*, like the instruction in this case, was too broad. It permitted the jury to find the defendant in *Pine* guilty for conduct that did not constitute the charged crime, as well as for conduct that did.[10] In holding that the instructional error in *Pine* substantially affected the defendant's rights, this court did not specify how the instructional error in *Pine* differed from the error in *Shoup*. The answer seems apparent, however: We presume that a jury follows a trial court's instructions, *DeMaris v. Whittier*, 280 Or 25, 31, 569 P2d 605 (1977), and giving the jury an erroneous legal rule[11] to decide an element of the state's case in *Pine* substantially affected the defendant's rights. To be sure, it was possible that the jury in *Pine* might have landed on a legally permissible answer despite having been given an incorrect instruction. But that possibility was too slight for this court to say in *Pine* that the error did not substantially affect the defendant's rights. No other conclusion explains this court's holdings in *Pine*, *Hernandez*, and an unbroken line of cases holding that an erroneous instruction substantially affects a party's rights, all of which were decided in light of the standard currently codified in ORS 19.415(2).[12]

---

[10] Similarly, the instruction in this case permitted the jury to find Allstate liable for damages for which it was not liable, as well as damages for which it was liable.

[11] In deciding whether an instruction is erroneous, a court must consider the challenged instruction in the context of all the other instructions. *See, e.g., State v. Oatney*, 335 Or 276, 290, 66 P3d 475 (2003), *cert den*, 540 US 1151 (2004) (stating proposition). In referring to an "incorrect instruction" or "erroneous legal rule," we refer to an instruction that, when read in the context of the other instructions, inaccurately states the law regarding an element of a claim or defense.

[12] The standard currently codified in ORS 19.415(2) has been a part of this state's civil and criminal law since the Deady Code. *See* General Laws of Oregon,

The dissent reasons that this court's decision in *Lyons v. Walsh & Sons Trucking Co., Ltd.*, 337 Or 319, 96 P3d 1215 (2004), requires a different conclusion. We do not read *Lyons* as broadly as the dissent does. *Lyons* arose out of an automobile accident in which a police officer died. 337 Or at 321. There was evidence that the police car in which the officer had been a passenger had turned in front of the defendant's oncoming truck. *Id.* at 322. The plaintiffs submitted three proposed jury instructions, each of which would have told the jury essentially that it "should not 'weigh or consider' [the] conduct [of the other officer who drove the police car] unless the jury found that the accident had been the 'sole and exclusive' result of that [officer's] conduct." *Id.* at 323. The trial court declined to give that instruction, instructed the jury that it could not compare the officer's and the defendant's negligence, if any, and submitted a special verdict form to the jury that asked:

> "Was defendant * * * negligent in one or more of the ways claimed by the plaintiff and, if so, was such negligence a cause of damage to the plaintiffs?"

*Id.* The jury answered that question "no," resulting in a judgment in the defendant's favor. *Id.*

On appeal, the Court of Appeals affirmed the trial court's judgment, holding that the plaintiffs' requested instructions had not correctly stated the law. *Id.* at 324. On review, this court affirmed but on a different ground. This court noted that the special verdict form asked a compound question and that the jury's answer could have reflected its conclusion either that the defendant had not been negligent or that the defendant's negligence had not caused the plaintiff's harm. *Id.* at 325. The plaintiffs did not argue that the trial court had instructed the jury incorrectly on negligence; they only challenged its instructions on causation. *Id.*

Civ Code, ch VI, § 533, p 284 (Deady 1845-1864) (providing that, in civil appeals, the judgment "shall only be reversed or modified for errors substantially affecting the rights of the appellant"); General Laws of Oregon, Crim Code, ch XXIII, § 246, pp 482-83 (Deady 1845-1864) (providing that, in criminal appeals, the court "must give judgment, without regard to * * * technical errors, defects or exceptions which do not affect the substantial rights of the parties").

The instructions thus provided two alternate paths by which the jury could have answered "no" to the question on the special verdict form. One was a correct statement of the law; the other was an incorrect statement of the law, in the plaintiffs' view. Because the jury could have based its answer on the special verdict form on the correct instructions regarding negligence, this court held that it could not say that any error in instructing the jury on causation had substantially prejudiced the plaintiffs' rights. As the court explained in *Lyons*, "[w]hat this court stated in *Shoup* applies equally to the narrow problem that the form of jury verdict used in the present case poses." *Id.* at 326.

The court was careful in *Lyons* to distinguish the "narrow problem" that the jury verdict form posed in that case from "other kinds of asserted trial error, such as a faulty jury instruction." *Id.* The court explained:

> "This was not a case in which the plaintiff advanced a single factual theory of liability that the form of jury verdict reflected. Nor did this case involve other kinds of asserted trial error, such as a faulty jury instruction, that may call for a different analysis of whether the error 'substantially affect[s] the rights of a party' under ORS 19.415(2). The jury verdict could have been based on one of two different rationales that the jury verdict form identified; it is impossible to tell which the jury used. Plaintiffs' claims of error may or may not be well taken, but they depend on an assumption that the jury's verdict was based on one rationale only."

*Id.* (brackets in original). The foregoing explanation makes clear that the court in *Lyons* understood that the jury verdict form in that case and a faulty jury instruction present distinct issues for the purposes of ORS 19.415(2). Nothing in *Lyons* suggests that the court intended to overrule *sub silentio* its holding in *Pine* less than a year earlier, its reaffirmation of *Hernandez* in *Shoup*, or an unbroken line of cases before *Shoup* holding that an incorrect instruction substantially prejudices a party's rights.

■ The dissent reasons that, despite what this court said in *Lyons*, the underlying problem in *Lyons* was the jury instruction and that, if the court applied *Shoup* to the instructional error in *Lyons*, we should apply it to the instructional error here as well. In essence, the dissent reasons that

the distinction that the court drew in *Lyons* does not withstand scrutiny and that *Lyons*' holding cannot be limited to the "narrow problem that the form of jury verdict used in [that] case pose[d]." We need not decide whether *Lyons* was correct in positing that the jury verdict form in that case and instructional error present distinct issues for the purposes of ORS 19.0415(2). This case does not involve a jury verdict form similar to the one in *Lyons*; it thus provides no occasion for us to decide whether the distinction that the court articulated in *Lyons* was correct. Rather, it is sufficient for the purposes of this case to reaffirm the general rule stated in *Pine*, *Hernandez*, and an unbroken line of cases that, when a trial court incorrectly instructs the jury on an element of a claim or defense and when that incorrect instruction permits the jury to reach a legally erroneous result, a party has established that the instructional error substantially affected its rights within the meaning of ORS 19.415(2).

In this case, the trial court incorrectly instructed the jury on the damages for which Allstate was liable. That error substantially affected Allstate's rights. Although the trial court's judgment must be reversed, the question that remains is whether the erroneous instruction affected only the jury's award for the breach of the UM provision or whether it also affected the jury's award for the breach of the PIP provision. We turn to that issue.

As noted, plaintiff sued Allstate for breach of contract. He alleged that Allstate had failed to pay sums that it owed him under both the PIP and the UM provisions of his insurance policy. Ordinarily, one might expect that any aggravation damages that plaintiff experienced as a result of the second and third accidents, which occurred two and five years respectively after the first accident, would not be included within any award of PIP damages. (The insurance policy, for instance, limits PIP coverage for medical expenses to certain reasonable and necessary medical expenses incurred within one year of the accident.) However, in defining plaintiff's rights under the PIP and UM provisions of his policy, the trial court instructed the jury generally that plaintiff had a right to recover up to $25,000 in economic damages under the PIP provision and up to $100,000 in noneconomic damages under the UM provision; that is, the trial court instructed the jurors that they should allocate any damages

between the two breaches based on the nature of the damages.[13]

Given those instructions and the instruction on aggravation damages, the jury could have included medical costs that plaintiff incurred after the second accident in the award of PIP damages; that is, the trial court's instructions erroneously permitted the jury to find that the second accident aggravated injuries that plaintiff sustained in the first accident and to assess PIP damages against Allstate for the medical costs that plaintiff incurred to treat those aggravated injuries. Because the trial court's erroneous instruction on aggravation affected both the jury's award of damages for breaching the PIP provision and its award for breaching the UM provision, neither damages award can stand.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DURHAM, J.,** dissenting.

The legal question that divides the majority and this dissent is straightforward: If the trial court has delivered an arguably erroneous jury instruction, should this court grant a new trial if the appellant can show only that the challenged instruction *might have affected* the appellant's rights but cannot show that the instruction *did affect* those rights? In my view, an appellant fails to show the requisite harm from instructional error by demonstrating only that the jury might have applied the instruction in returning its verdict. Because the majority grants a new trial here even though the appellant can show only that the jury might have used the challenged instruction in returning its verdict, I dissent.

This case requires this court to apply ORS 19.415(2), which provides that "[n]o judgment shall be reversed or modified except for error substantially affecting the rights of a party."[1] This court has held, recently and repeatedly, that a

---

[13] Neither party assigned error to these instructions, even though they do not appear to reflect accurately plaintiff's rights under the PIP and UM provisions. We do not commend these instructions. We note them only to explain our conclusion that the effect of the trial court's erroneous instruction on aggravation damages was not limited to the jury's award of damages for the breach of the UM provision.

[1] This court must give a consistent interpretation to the legal requirement in ORS 19.415(2) that a legal error have a substantial effect on the rights of any party

trial error does not amount to an "error substantially affecting the rights of a party" under ORS 19.415(2) if the record demonstrates only that the error *might have affected* the appellant's rights.

In *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), the court devoted an extensive analysis to the then-extant court-created rule that allowed the reversal of a judgment if the appellate court could not determine ("we can't tell") whether the particular trial error had led the jury to return an erroneous verdict. Following that analysis, the court held that awarding a new trial on appeal when the record showed only that the assigned error *might* have affected the outcome was not consistent with ORS 19.415(2). Rather, the court decided that that statute requires this court to

---

that wishes to challenge the error because substantially the same requirement appears in several other areas of Oregon law. ORS 40.025(1), which codifies OEC 103(1), provides:

"Evidentiary error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence *unless a substantial right of the party is affected*[.]"

(Emphasis added.)

ORCP 12 B provides, in part:

"The court shall, in every stage of an action, disregard any error or defect in the * * * proceedings *which does not effect the substantial rights of the adverse party*."

(Emphasis added.)

Finally, Article VII (Amended), section 3, of the Oregon Constitution provides, in part:

"If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be changed, and the supreme court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the supreme court."

Under settled Oregon law, those quoted provisions require a showing that legal error actually affects a substantial right of a party before the court will grant relief from the error. *See, e.g., Scanlon v. Hartman*, 282 Or 505, 511, 579 P2d 851 (1978) ("To warrant reversal the ruling of the trial court must be not only erroneous, but prejudicial[ ]" (citing *Edward, Guardian, v. Hoevet*, 185 Or 284, 200 P2d 955 (1949)). However, the majority's new standard, requiring a new trial where there is only a *possibility* that the error affected the appellant's rights, places that settled Oregon law in doubt.

grant a new trial if, but only if, the record shows that an error occurred and that the error *did* affect the outcome:

> "The words of ORS 19.415(2) demonstrate that an error must cause something more than the 'possibility' of a different result before the appellate court may reverse a judgment. * * * Thus, an error 'affecting' a party's rights is an error that can be said to '*produce* a material influence' or 'to *have* a detrimental influence' on those rights, and not merely one that 'might' have changed the outcome of the case. The use of the adverb 'substantially' further limits the type of error that can result in reversal of a judgment. 'Substantially' means 'in a substantial manner,' and the relevant definition of 'substantial' is 'being of moment: IMPORTANT, ESSENTIAL.'

> "Those definitions indicate how far defendant's proposed 'outcome might have been different' standard is from the standard set out in ORS 19.415(2). The possibility that an error might have resulted in a different jury verdict is insufficient under the statute."

*Id.* at 173 (emphases in original; citation omitted).

In *Lyons v. Walsh & Sons Trucking Co., Ltd.*, 337 Or 319, 96 P3d 1215 (2004), the plaintiffs in a wrongful death case appealed from a judgment for the defendant based on a special jury verdict. The plaintiffs sought a new trial, claiming on appeal that the trial court, in instructing the jury, had misinterpreted *former* ORS 18.470 (2001), *renumbered as* ORS 31.600 (2003), regarding comparative fault. This court, however, independently examined the record and determined that it could not reach the plaintiffs' instructional error issue. Instead, this court determined that the jury had simply answered "no" to a compound question on the special verdict form regarding the subjects of negligence and causation and that, as a result, the court could not tell if the jury's defense verdict rested on a permissible or an arguably impermissible ground. This court stated:

> "Our inability to determine which ground led the jury to decide as it did is important, because plaintiffs have focused all their arguments in this court on the second part of the question. That is, plaintiffs assert that the instructions that the trial court gave and the evidence that it admitted improperly permitted the jury to consider [police officer]

Rector's conduct in assessing whether [defendant] Walsh's conduct was a substantial factor in causing the accident. But such errors by the trial court, if errors they were, are irrelevant if the jury decided the case instead on the pristine proposition that Walsh was not negligent."

*Id.* at 325 (footnote omitted). The court quoted ORS 19.415(2) and recounted that *Shoup* had "explained that that statute requires more than speculation concerning whether an alleged error affected a jury's verdict[.]" *Id.* Then, in a passage that has particular relevance to this case, the court stated:

"The jury verdict could have been based on one of two different rationales that the jury verdict form identified; it is impossible to tell which the jury used. Plaintiffs' claims of error may or may not be well taken, but they depend on an assumption that the jury's verdict was based on one rationale only. The present record does not support plaintiffs' assumption, and, because they are asserting error, the consequences of the inadequacy of the record in that respect fall on plaintiffs. * * * That is, plaintiffs cannot show, on this record, that any of the alleged errors about which they complain 'substantially affect[ed]' their rights. Plaintiffs thus cannot prevail here."

*Id.* at 326 (citation omitted). I will return to the rationale in *Lyons* later in this opinion.

With the foregoing review of the court's current interpretation of ORS 19.415(2) in mind, I turn to a review of the pertinent facts of this case. It is necessary to do so, because the majority opinion discusses the facts in a manner that downplays or ignores certain facts that undermine its stated result, thus impeding rather than aiding this court's assessment of the underlying legal question.

We must review the record in the light most favorable to the party who prevailed below, plaintiff. This is an action for breach of the uninsured motorist (UM) and personal injury protection (PIP) provisions of the automobile insurance policy that defendant sold to plaintiff. Defendant's automobile insurance policy provided coverage for injuries caused by a "phantom" vehicle, which is one type of "uninsured" vehicle. In particular, the policy provides coverage for

wrongful acts of the driver of an uninsured vehicle. Plaintiff may recover damages for breach of contract against defendant by demonstrating, among other things, that defendant refused to pay the benefits of the policy, and that plaintiff had a viable tort claim against the phantom vehicle driver and could have obtained a favorable judgment against him. *Vega v. Farmers Ins. Co.*, 323 Or 291, 306, 918 P2d 95 (1996).

Plaintiff suffered serious personal injuries and incurred significant medical expenses as the result of an automobile accident with an unidentified "phantom" truck on October 24, 1997. I refer in this opinion to that event as the "first accident."

Plaintiff had a second automobile accident, and also suffered personal injuries, on August 6, 1999. Plaintiff had a third automobile accident on August 2, 2002, and suffered additional personal injuries. Those accidents occurred before this case went to trial. Plaintiff developed the theory, and later claimed in court, that the damages that he suffered in the second and third accidents were the natural, direct, and foreseeable consequences of the first accident and, thus, defendant was liable under its UM "phantom vehicle" coverage for the damages that plaintiff suffered in the second and third accidents. I refer to those damages, as does the majority, as "aggravation" damages. Defendant asserted that it had no liability for any damages, including aggravation damages arising from the second and third accidents.

The trial court, prior to trial, had granted a partial summary judgment in plaintiff's favor on the question whether a "phantom vehicle," within the meaning of defendant's policy, had caused plaintiff's injuries in the first accident. That decision narrowed the questions that the jury was required to determine at trial. We may summarize those issues as follows:

1. What were plaintiff's monetary damages resulting from the first accident on October 24, 1997, if any?

2. Were the damages that plaintiff suffered in the second and/or third accidents a consequence of the acts of the driver of the phantom vehicle? If so, what is the amount of those aggravation damages?

Each party submitted proposed jury instructions on those subjects. The trial court rejected the jury instructions submitted by the parties and, instead, drafted its own, as follows:

"SUBSEQUENT ACCIDENTS—AGGRAVATION OF PRIOR INJURIES

"The contract entered into by the plaintiff and the defendant sets forth that the defendant will provide coverage for all the natural, direct and proximate consequences of the wrongful acts of the driver of the phantom vehicle. If you find that the plaintiff was injured by those acts in the accident of October 24, 1997, and then had a subsequent accident in which the plaintiff suffered further injury which would not have occurred but for the original injury, the defendant may then be held liable for the enhancement or aggravation of plaintiff's injuries caused by the subsequent accident.

"Defendant's liability would apply only to the injuries you attribute to the accident of October 24, 1997, and to any enhancement or aggravation of those injuries, not to any new injuries suffered by plaintiff in any subsequent accident."

It is clear that the court's instruction *authorized* the jury to award damages for injuries that plaintiff suffered in the first accident. The instruction additionally *authorized* the jury to award aggravation damages *if* the jury found that, during the second and third accidents, plaintiff suffered "further injury which would not have occurred but for the original injury" received in the first accident. The last sentence of the court's instruction emphasized, to the point of redundancy, the compound nature of the jury's authority: the jury could find defendant liable only for injuries incurred in the first accident. Separately, the jury also could find defendant liable for "any enhancement or aggravation of those injuries" in the second and third accidents, but could not award damages for "any new injuries suffered by plaintiff" in the later accidents. It is important to recognize that the jury instruction correctly did not require the jury to award damages for any of plaintiff's accidents, and correctly permitted the jury, if it so desired, to award damages solely for the first accident and to

refuse to award any aggravation damages for the second and third accidents.

Defendant objected to the instruction. Significantly, defendant did not object to the instruction insofar as it permitted the jury to hold defendant liable for injuries incurred by plaintiff during the *first* accident. Rather, defendant contended that the instruction should not grant the jury the additional authority to award aggravation damages on the basis of any injuries suffered by plaintiff during the *second and third accidents*. It is only the latter contention regarding the court's instruction that defendant pursues before this court. I assume without deciding that defendant's latter contention about the court's instruction is correct.

The parties and the court submitted a form of general verdict to the jury. The jury returned the general verdict, awarding plaintiff $50,000 and $25,000 in damages for breach of the UM and PIP insurance provisions, respectively. Because the parties and the court employed a general verdict only, the record does not indicate whether the jury based its award solely on the injuries plaintiff suffered during the first accident or, instead, on some combination of those original injuries plus other injuries suffered by plaintiff during the second and third accidents (or either of them). That is, nothing in the record signals whether the jury actually awarded any damages for any aggravation of plaintiff's injuries that the second or third accidents may have caused. What is clear from the record is that the jury had before it sufficient evidence to return its entire general verdict award in plaintiff's favor on the basis of the injuries that plaintiff suffered in the first accident alone, and no party argues to the contrary. That fact is central to any proper consideration of the assigned error on appeal, yet the majority fails to acknowledge it.

The majority states that "the trial court's instruction gave the jury the wrong legal rule to apply. The instruction told the jury that it could hold Allstate liable for damages for which the jury could not, on this record, hold it legally responsible." 344 Or at 322. That statement addresses the first step in any instructional error inquiry: Did the challenged instruction state the law erroneously? However, the instructional error dispute here concerns only the instruction

regarding aggravation damages that plaintiff allegedly suffered in the second and third accidents discussed above. As noted, I assume for purposes of discussion that the instruction permitting the jury to award aggravation damages for the second and third accidents was erroneous. The majority commits error in failing to acknowledge that the instructional error dispute here concerns only the authorization to award aggravation damages for the second and third accidents.

The majority then proceeds to the second analytical step: Did the arguably erroneous instruction affect the outcome of the case? The correct rule in that regard appears in *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970), a case that the majority cites but fails to quote:

> "As a result, cases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jurymen *which affected the outcome of the case.*"

(Emphasis added.) The emphasized portion of that rule does not permit reversal of a jury's verdict for instructional error if the appellant shows only that the error *might have affected* that party's rights.

Instead of asking the correct question—whether the instruction regarding aggravation damages affected the verdict in this case—the majority, quoting Allstate's arguments, twists the applicable legal standard to allow reversal if the challenged instruction merely "permits" an erroneous result:

> "Allstate observes that, when an instruction tells the jury to apply the wrong legal rule and the erroneous instruction permits the jury to reach an incorrect result, this court consistently has held that the error substantially affects the party's rights."

344 Or at 322. For that proposition, the majority cites three cases, none of which supports the majority's altered rule, and one of which, *Waterway Terminals*, contradicts it.

The majority's alteration of the correct rule is misleading and distorts the proper application of ORS 19.415(2) in this case. We must assume, of course, that the jury carefully listened to and followed all the court's instructions, and awarded damages in conformity with its view of the evidence. However, it did so only to the extent that the instructions permitted it to do so. Because the jury returned only a general verdict and because the challenged jury instruction stated the jury's authority to award damages in a compound manner, as described above, we can only speculate about whether the jury's award includes any sum for aggravation damages due to the second and third accidents. The majority errs in refusing to acknowledge that the record does not demonstrate that the jury awarded any sum for aggravation damages in response to the portion of the court's instruction that defendant challenges.

Can this court, on the present record, reach and decide defendant's claim that the court's instruction erroneously permitted the jury to consider awarding aggravation damages for plaintiff's injuries received in his second or third accidents? This court's extensive analysis in *Shoup* and *Lyons* of the meaning of ORS 19.415(2) indicates that the answer is "no." *Lyons*, in particular, illuminates the proper analytical path here. According to *Lyons*, because neither the general verdict nor any other part of the record here shows that the jury's damages award includes aggravation damages for the second and third accidents, defendant's challenge to the instruction rests entirely on an unproven assumption that the jury *did* award aggravation damages. Defendant is the party who is asserting error and requesting relief from the judgment below. As *Lyons* held, "the consequences of the inadequacy of the record in that respect fall on the appealing party," here, defendant.[2] Defendant cannot demonstrate, as ORS 19.415(2) requires, that the error of

---

[2] The following passage from *Shoup*, quoted in *Lyons*, is especially pertinent here:

> " 'The rule embodied in ORS 19.415(2) is neutral as between plaintiffs and defendants; it places the burden to make a record that demonstrates prejudicial error on whichever party loses in the trial court and then seeks reversal or modification of the judgment on appeal.' "

*Lyons*, 337 Or at 326 (quoting *Shoup*, 335 Or at 174).

which it complains "substantially affect[ed]" its rights. Thus, ORS 19.415(2) prevents this court from granting affirmative relief to defendant.

*Lyons* recognized that this court's rationale in *Shoup*, which concerned the submission to a jury of both permissible and impermissible claims of injury, also applies when a jury verdict form reports a valid jury verdict but provides an unclear answer about how the jury resolved the case. Specifically, the *Lyons* court, on its own motion, declined to reach the claimed instructional error because the jury's verdict form did not demonstrate with clarity that the jury had based its verdict on the assertedly erroneous portion of the challenged instruction. In the course of its discussion, the court included the following sentence:

> "Nor did this case involve other kinds of asserted trial error, such as a faulty jury instruction, that may call for a different analysis of whether the error 'substantially affect[s] the rights of a party' under ORS 19.415(2)."

*Lyons,* 337 Or at 326.[3] That sentence recognizes the obvious: different kinds of asserted trial error *may call* for different analysis. That includes, of course, asserted errors in a jury instruction. However, that sentence is not a holding that the court will not apply ORS 19.415(2) in cases, like *Lyons* and this case, where an appealing party's claim of harm from an allegedly erroneous jury instruction is not shown clearly in the record.

The majority also attempts to distinguish *Shoup* on the ground that *Shoup* categorically differentiated other cases involving asserted errors in jury instructions, citing the court's analysis, in a footnote, of *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 957 P2d 147 (1998). *Shoup,* 335 Or at 172 n 2. *Hernandez*, decided five years before *Shoup*, had applied the then-accurate standard under ORS 19.415(2),

---

[3] The quoted sentence from *Lyons* is ambiguous and probably erroneous and misleading. Contrary to that sentence, the plaintiff in *Lyons* did seek to challenge an assertedly erroneous jury instruction. The court declined to address that assigned error because the record on appeal, including the special verdict returned by the jury, failed to demonstrate that the allegedly faulty instruction in fact affected the jury's verdict. Thus, properly analyzed, *Lyons* does identify a circumstance in which this court, in applying ORS 19.415(2), should decline to address a challenge to an arguably erroneous jury instruction.

that a party's rights were substantially affected by a trial error—there, an erroneous jury instruction—if the outcome either would have or may have been different had the error not occurred. The correctness of *Hernandez*'s application of that standard in 1998 was not an issue before the court in *Shoup*. Nevertheless, this court stated in the footnote in question: "We do not, however, question the conclusion reached by this court in *Hernandez*. The error in jury instructions at issue in *Hernandez* was 'reversible' under ORS 19.415(2)." *Shoup*, 335 Or at 172 n 2.

Those two sentences may be debated from several viewpoints. However, it is not debatable that they are quite conclusory and provide no analysis whatever to support their accuracy. Moreover, the second sentence constitutes only *dictum* and does not represent an authoritative holding of the court. Again, the majority overblows the significance of the two sentences in a footnote by stating that the instructional error in *Hernandez* "marks the limit of *Shoup*'s holding[,]" 344 Or at 324, and that *Shoup* "reaffirmed" the *Hernandez* court's conclusion that instructional error alone substantially affects a party's rights under ORS 19.415(2) if the error "may have" led to a different outcome. *Id.* at 325.

Finally, the majority cites *State v. Pine*, 336 Or 194, 82 P3d 130 (2003). In *Pine*, the defendant appealed from a criminal conviction for third-degree assault under ORS 163.165(1)(e). He argued that the trial court had erred in instructing the jury by allowing a conviction without proof that the defendant himself had caused any physical injury to the victim but, instead, merely had aided another in causing the injury. After the parties briefed the case, but before oral argument, the state brought *Shoup*, which this court decided earlier the same year, to the court's attention. The state contended that there was some evidence in the record that defendant in fact had personally caused physical injury to the victim. Thus, according to the state, the defendant could not establish that he had been prejudiced by the alleged instructional error in the trial court. This court distinguished *Shoup*, responding that, even if the jury had believed defendant's version of the facts, the instructional error would have led to a conviction for a nonexistent crime. *Id.* at 200. After examining the statute in question in light of the defendant's

version of the facts, the court stated, inconsistently, that the instructional error *"would have* affected the outcome of the case. That is so, because the jury *could have* convicted defendant of third-degree assault under the instruction even if it found that he had not caused physical injury to [the victim] * * *." *Id.* at 210 (emphases added). The opinion in *Pine* did not confront the inconsistency of its conclusions that, on the one hand, the instructional error affected the outcome of the case and, on the other hand, the error could have affected the outcome.

Apart from that analytical inconsistency, the *Pine* opinion must be viewed in context. The criminal trial in *Pine* occurred long before *Shoup* was decided, and the steps that the defendant's trial counsel took to preserve the error at the trial were sufficient under the rules of criminal procedure that existed at that time. Had *Shoup* predated the trial, competent counsel with notice of that case might have taken additional steps to confirm the existence of prejudice from the court's instruction.

However, even if we conclude that *Pine*'s "possibility of prejudice" discussion did reflect the court's view in that criminal case, that establishes only that this court has written inconsistently in deciding *Pine*, *Shoup*, and *Lyons*. There are good reasons to follow the more explicit discussion of the issue by this court in *Shoup* and *Lyons*.

As *Lyons* in particular emphasized, the core problem in cases of this kind does not concern the allegedly erroneous instruction. Instead, the problem concerns the deficiencies and ambiguities in an appellate record that simply fails to show that the challenged instruction affected the outcome of the case. *Shoup* and *Lyons* hold that the appealing party has the responsibility to make an adequate record regarding the existence of genuine prejudice from the asserted trial error or suffer the consequences. In this case, the majority simply ignores the consequence that it imposed in *Lyons*. It is illogical for the majority to claim that its result here is consistent with the rationale in *Lyons*.

In a final confusing twist, the majority purports to *distinguish* the *Lyons* case on the ground that it involved a form of jury verdict, not a claimed faulty jury instruction, as

here. But the problem in *Lyons* was not that the form of the jury verdict contained an error—indeed, the special jury verdict format was not erroneous—but instead that neither the verdict form nor any other part of the record demonstrated that the jury in fact had applied the challenged jury instruction in reaching its verdict (*i.e.*, that the challenged instruction affected the outcome of the jury's verdict). That is precisely the argument that plaintiff makes in this case, and the court should give the same answer here that it gave in *Lyons*. Thus, the majority relies on a distinction without a real difference.

By asserting that *Lyons* is distinguishable, rather than explaining or overruling the holding in *Lyons*, the majority asserts to the trial bench and bar that both this case and *Lyons*, despite their logically inconsistent results, are the law of Oregon. The majority's response will lead to needless and expensive litigation about whether, under the conflicting results in this case and in *Lyons*, an appellate court can decide that an asserted error in part of a compound jury instruction warrants a new trial.

In a challenge to only a part of a jury's compound authority to return a verdict, ORS 19.415(2) requires a showing on review that the challenged aspect of the jury's authority affected the verdict. In assessing whether such an error requires reversal, it should not matter to the court whether the trial court explained the jury's compound authority in a jury instruction (as here) or in a special verdict form (as in *Lyons*). This court should not have two opposite standards for reversible error that depend only on the particular procedural device that the trial court selected in describing the jury's compound authority. Yet that is precisely the import of the majority's assertion that *Lyons* is distinguishable from this case.

This court should not have two substantively different standards for granting relief under ORS 19.415(2): one for cases involving claimed errors in jury instructions, in which a showing of *potential* prejudice to the appellant's rights will suffice, and a different one for cases involving other claimed trial errors, in which only a showing of *actual*

prejudice will suffice.[4] Defendant stands in the same position, as a matter of legal analysis, as the plaintiffs in *Lyons* who sought review of an allegedly erroneous instruction regarding comparative negligence. The appealing party in each case asks this court to make the same unwarranted assumption that the jury in fact employed the challenged part of the jury instructions in rendering its verdict. This court refused to address the asserted instructional error in *Lyons* because the record did not show that the jury actually based some part of its verdict on the challenged instruction. This court, as noted, should give the same answer to defendant here that it gave to the appealing parties in *Lyons*. ORS 19.415(2) has the same meaning for both cases. Because the majority fails to apply ORS 19.415(2) in the same way that it applied that statute in *Lyons*, I respectfully dissent.

---

[4] The confusion resulting from the conflicting results here and in *Lyons* should lead prudent trial counsel to protect their appellate records wherever possible by requesting the use of special verdict interrogatories that identify precisely a jury's possible application of any challenged jury instruction in reaching a verdict. Additionally, trial counsel should carefully examine proposed special jury verdict forms, and revise or eliminate passages that express in a compound manner the jury's authority to determine issues surrounding liability, damages, or affirmative defenses.